## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FRANK SALVUCCI, SR. AND<br>FRANK SALVUCCI, JR.<br><br>**PLAINTIFFS**<br><br>v.<br><br>WATERTOWN POLICE DEPARTMENT,<br>EDWARD DEVEAU, INDIVIDUALLY AND<br>AS CHIEF OF POLICE, OFFICER KEITH<br>PARENT, OFFICER ORLANDO RODRIQUEZ<br>SERGEANT JOSEPH DEIGNAN, SERGEANT<br>WILLIAM LOGUE SERGEANT<br>HOISETH, OFFICER LEITNER, and<br>OFFICER DONOHUE, AND AS TO EACH<br>INDIVIDUALLY<br><br>**DEFENDANTS** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL ACTION**<br>) **DOCKET NO.: 04 12351-~~REK~~ JGD**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW COMES THE PLAINTIFFS**, Frank Salvucci, Sr. (hereinafter "Salvucci, Sr") and Frank Salvucci, Jr. (hereinafter "Salvucci Jr.") (collectively "Plaintiffs"), and hereby submit the within Memorandum of Law in support of their Opposition to Defendants' Motion For Summary Judgment pursuant to Fed.R.Civ.P. 56. In support of Plaintiffs' opposition, the Plaintiffs attach and incorporates herein the Affidavits of Frank Salvucci, Sr. (*See* **Exhibit "A"**), Frank Salvucci, Jr. (*See* **Exhibit "B"**) and Dr. Kristine Holmberg (*See* **Exhibit "C"**).

1

I.    **PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.    Denied. Plaintiff, Frank Salvucci, Jr. purchased the property located at 8 Falmouth Road, Watertown, Massachusetts on January 11, 2001.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted to the extent that the Watertown Police Department was dispatched to the Plaintiff's residence. Plaintiff, however, states that the Watertown Police Department took no action to investigate and/or remedy the numerous complaints made by Plaintiffs. (See Exhibits "A" and "B" attached to Plaintiffs Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

6.    Admitted.

7.    Admitted.

8.    Admitted.

9.    The period of time that these dispatches occurred was from 2/1/01 to 8/04.

10.    Denied. Plaintiffs state that the Watertown Police Department failed to prepare written reports on all occasions. Furthermore, the reports the Watertown Police Department did prepare failed to incorporate an accurate and complete description of the incidents.

11.    Admitted. Plaintiff, however, denies that he was trespassing. Plaintiff further states that Officer Roderiguez and Officer Parent applied the use of excessive force upon him thereby causing severed injuries to Plaintiff, Frank Salvucci, Sr.

12.    See response to No: 11 above.

13.    Denied. Plaintiff states he did not resist at all.

14.    Plaintiff is without sufficient knowledge to admit or deny the allegation asserted in Paragraph number 14.

15.    Admitted. Salvucci Sr. was also video taped.

16.    Denied. Plaintiff was transported to the Waltham District Court where he was arraigned and pled not guilty.

17.    Admitted. Plaintiff's handcuffs were removed at the request of Frank Salvucci Sr. because of the pain he was experiencing from the application of the handcuffs and the assault by Officers Roderiguez and Parent. Plaintiffs are without sufficient knowledge to admit or deny the policy of the Watertown Police Department

18.    Admitted. Plaintiff states, however, that he experienced extreme pain while walking home stopping frequently due to being out of breath from nervousness, trauma, heart palpitations and high blood pressure form the assault by the Watertown Police officer.

19.    Admitted. Plaintiff is, however, currently pursuing an appeal of the conviction.

20.    Plaintiffs are without sufficient knowledge to either admit or deny the allegation set forth in paragraph number 20.

21.    Admitted. Plaintiff, Salvucci, Jr. is without sufficient knowledge as to whether or not criminal charges were sought as a "result" of assistance of the Attorney General's Office or the District Attorneys' office. Plaintiff believes that Sgt. Dt. Deveau encouraged Defendants to add racial charges to their previously filed complaints which complaints did not contain such racial charges.

22.    Denied. Salvucci, Jr. was convicted of only harassment.

23.    Plaintiffs are without sufficient knowledge to admit or deny the allegation set forth in No. 23.

24.    Plaintiffs are without sufficient knowledge to admit or deny the allegation set forth in No. 24.

25.    Plaintiffs are without sufficient knowledge to admit or deny the allegation set forth in No. 25.

II.        **PLAINTIFFS' L.R. 56.1 STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff Frank Salvucci, Jr. (Salvucci, Jr.), resides at 8 Falmouth Road, Watertown, Massachusetts.  He purchased his home on or about 1/12/01;

2. The Dumornay/Franklin family resides next door at 43 Waltham St, Watertown, Massachusetts.  There home is in close proximity to the Salvucci, Jr. property;

3. The two properties share an easement whereby the Dumornay/Franklin family may use it to access their driveway, but may not park their car on the easement;

4. Bertilde Franklin owned only a "strip of land in front of the garage doors";

5. Francis Durmornay at no time owned any of the land in question; not even the small strip of land in front of the garage;

6. The two neighbors began to contact the Defendant Watertown Police Department (WPD) voicing allegations against each other. (Affidavit of Detective-Sergeant William Logue.);

7. The Salvucci family sought assistance from the WPD on approximately thirty (30) occasions (Id.);

8. The Dumornay family sought assistance from the WPD on approximately twenty-two (22) occasions. (Id.);

9. These dispatches occurred between 1/01 and 1/05;

10. On June 21, 2002 the WPD were dispatched to the Dumornay residence after receiving a call from Mr. Dumornay. (Id.);

11. Defendant Officer Orlando Rodriguez (Rodriguez) arrived on the scene sometime around 8 am. (Deposition of Officer Orlando Rodriguez page 14);

4

12. Defendant Officer Keith Parent (Parent) arrived on the scene shortly after Rodriguez. (Id. at 30);

13. Parent testified that Plaintiff Frank Salvucci, Sr. (Salvucci, Sr.) was standing fifteen feet in front of the garage door. (Deposition of Officer Parent page 15);

14. Defendant Patrol Supervisor Sgt. Deignan (Deignan) was the third and final officer to arrive on the scene. (Id. at 30);

15. Deignan gave the order to arrest Salvucci, Sr. (Deposition of Sgt Deignan page 37);

16. Rodriguez and Parent handcuffed Salvucci, Sr. (Deposition of Officer Rodriguez page 48);

17. Rodriguez was in his forties, six feet tall/or taller and approximately 170 pounds at the time of the arrest. (Deposition of Officer Rodriguez page 116-117);

18. Parent was 28 years old, six feet tall/or taller and approximately 220 pounds at the time of the arrest. (Deposition of Officer Parent page 42);

19. Salvucci, Sr. was 82 years old, five and ½ feet tall and approximately 145 pounds at the time of the arrest. (Exhibit 6);

19. Salvucci, Sr. sustained injuries to his knees and elbows and a torn rotator cuff. (Deposition of Frank Salvucci, Sr. page 87);

20. Due to the high number of complaints, Chief Deveau ordered Detective Logue to investigate the reports made from the two families (Affidavit of Detective Logue);

21. Detective Logue filed an initial report on March 30, 2002 stating that Salvucci, Jr. may have engaged in conduct that could be considered criminal harassment. No charges were brought as a result of this report;

22. On 3/29/02 an incident report was completed regarding a complaint Salvucci, Jr. made after a "death cross" was constructed in his yard. Salvucci, Jr. attempted to file a supplemental report addressing inaccuracies in the incident report, but his report was not included. (see incident report # 2006534)

23. On 6/21/02 an incident report was filed regarding a confrontation between Salvucci, Jr. and Dumornay's daughters over use of the easement. (see Incident report # 2013053)

24. Detective Logue filed a second report, with text identical to the March 30, 2002 report. (see Incident report # 2016847)

25. On 8/14/02 Dumornay and his daughters filed a supplemental report to Incident report # 2013053 now alleging that Salvucci, Jr. used racially sensitive language during the 6/21/02 confrontation. These allegations were not made in the initial report.

26. On Sept 9, 2002 a criminal complaint was issued against Salvucci, Jr. He was subsequently charged and convicted of criminal harassment. (Affidavit of Detective Logue.)

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986); Beatty v. WMATA, 860 F.2d 1117, 1120-21 (D.C. Cir. 1988). The

party seeking summary judgment carries the initial burden of demonstrating the absence

of any genuinely disputed issue of material fact. *See* Beatty, 860 F.2d at 1122. The Court

views the record and evidence on summary judgment in the light most favorable to the

nonmoving party, giving that party the benefit of all reasonable inferences. Levy v.

FDIC, 7 F.3d 1054, 1056 (1st. Cir. 1993); Startmore v. Goodbody, 866 F.2d 189, 191

(6th Cir. 1989) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

487 (1986)).  Once the moving party has presented evidence of the absence of a genuine

issue, the nonmoving party must respond by "placing at least one material fact in

dispute." FDIC v. Anchor Properties, 13 F.3d 27, 30 (1st. Cir. 1994) citing Darr v.

Muratore, 8 F.3d 854, 859 (1st. Cir. 1993).

"It is axiomatic that Rule 56 must be used carefully so as not improperly to

foreclose trial." Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d

1317, 1323 (4th Cir. 1995). Courts should be especially cautious before entering

summary judgment where, as here, liability is likely to turn on factual questions about the

purpose and effects of conduct whose existence is not disputed. *See, e.g.*, Eastman Kodak

Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 482-86 (1992).

### B.   GENUINE ISSUE OF MATERIAL FACT EXIST RELATIVE TO THE EXCESSIVE FORCE AND ASSAULT AND BATTERY CLAIM.

The plaintiff's have shown that under the Fourth Amendment's proscribed objective

reasonableness standard, there are several disputed issues of material fact.  The standard

is "whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them." Graham v. O'Connor, 490 U.S. 386, 397 (1989). There are three guidelines set forth to aid in the determination of whether the amount of force an officer used while making an arrest was reasonable: 1.) The severity of the crime at issue; 2.) whether the suspect poses an immediate threat to the safety of the officers or others; and 3.) whether [the suspect] is actively attempting to resist arrest or attempting to evade arrest by flight. Alexis v. McDonald's, 67 F. 3d, 352, 396 (1995).

Under these guidelines there are material issues of fact in question regarding the arrest of Salvucci, Sr. on June 21, 2002. The officers admit that force was necessary, because Salvucci, Sr. was passively resistant to being handcuffed (*See* **Exhibit "D"** (Deposition of Orlando Rodriguez) pp. 115-116). Yet, Officer Rodriguez ("Rodriguez") also testified that at no time did Salvucci, Sr., an eighty-year old man, make physical contact with or even threaten any of the officer's or Mr. Dumornay during the incident, nor did he attempt to evade arrest. (**Exhibit "D"** pp. 81-84). Neither Officer Keith Parent ("Parent") or Sergeant Deignan ("Deignan"), the other two officers present at the scene, mention any type of threatening behavior from Salvucci, Sr. in their depositions. (*See* **Exhibit "E"** (Deposition of Officer Parent) generally and **Exhibit "F"** (Deposition of Sergeant Deignan) generally). Applying the Alexis analysis, trespassing on its face is a low-severity offense. Unless the behavior of the suspect could be objectively considered threatening, or it objectively appeared that the defendant was actively resisting or attempting to evade arrest, the arrest should theoretically require minimal force. Since therefore, Salvucci Sr. was non-threatening and merely passively resistant to being handcuffed, there exists a genuine issue of material fact as to whether an amount of force

that resulted in injuries to his knees and elbows, including a torn rotator cuff, (*See*

**Exhibit "A"**) was reasonably necessary.

In addition, the defendant's motion for summary judgment, quotes: "Not every

push or shove, even if it may later seem unnecessary in the peace of a judge's chambers

violates *the Fourth Amendment*." Johnson v Glick, 481 F.2d, 1028 (1973).  In the actual

case, the quote finishes ". . . a prisoners constitutional rights." Id. Johnson was premised

upon a warden's questionable handling of an inmate during an altercation that occurred at

a prison. Id.  The arrest of Salvucci, Sr. took place in a residential neighborhood at 8 am

on a school day (*See* **Exhibit "G"** (Deposition of Frank Salvucci Sr.) p. 51), not a

location comparable to a prison environment.  Furthermore, Salvucci, Sr., was a pretrial

detainee yet to be arraigned, not an inmate involved in an altercation.  In rare instances

the Johnson principle has extended to situations involving non-prisoners, but the crux of

its application still rests on objective reasonableness of the police officer given the

totality of the circumstances.  See eg., Graham v O'Connor, 490 U.S. 386 (1989)

(plaintiff, a diabetic suffering from an insulin reaction, acted frantically by running

around his car and passing out as police were attempting to detain him).  In this situation,

the detainee was exhibiting erratic and unexplainable behavior the police officers could

reasonably believe resulted from ingesting a controlled substance. Id. at 389.  There is no

evidence that Salvucci, Sr. was exhibiting any sort of unusual behavior.  None of the

officers testified that he appeared frantic, under the influence or that he posed any danger

to himself or others. Once again, this evidences a genuine issue of fact as to whether the

amount of force used against Salvucci, Sr. was necessary under the circumstances.

Similarly there is conflicting testimony as to the manner in which Salvucci Sr. was arrested. (*See* **Exhibit "A"**.) The arresting officers testified that they merely placed handcuffs on Salvucci, Sr. (See **Exhibit "D"** pp. 117-120; **Exhibit "E"** p. 39), yet his injuries are consistent with having been thrown to the ground. (*See* **Exhibit "A"**). In addition, Salvucci Sr. testified that he was thrown to the ground and hit in the back (*See* **Exhibit "G"** pp. 59-60). Thus there is conflicting evidence as to how Salvucci Sr. sustained his injuries as evidenced in the doctor's reports. See eg., Miller v Laton, F.3d, 902 (There was conflicting evidence as to what caused the sixty year old plaintiff to fall to the ground and whether the officer acted reasonably in subduing him.)

Another issue of material fact is whether Officer Rodriguez was aware of the injury to Salvucci, Sr.'s shoulder. Salvucci, Sr. testified that he told Rodriguez of shoulder pains while in the patrol car (*See* **Exhibit "A"**; **Exhibit "G"** p 66), whereas Rodriguez claims Salvucci, Sr. never mentioned being hurt. (See **Exhibit "D"** p.123). Also, Salvucci, Sr. mentioned to Sergeant Deignan during his booking that he was experiencing shoulder pain. (*See* booking video; **Exhibit "F"** p. 68). See Eg., Walton v. City of Southfield, 995 F.2d 1331 (Summary judgment on the excessive force claim was reversed because there was a genuine issue of material fact as to whether the police officer knew the elderly plaintiff's shoulder was injured before he handcuffed her.)

Finally, the defendants contend that that Officer Deignan could not have used excessive force because he never physically touched Salvucci, Sr., but a supervisor may be held liable under a § 1983 claim if "he formulates a policy or engages in a practice that leads to a civil rights violation." McDermott v Town of Windham, 204 F.2d 54, 60. The actions of the supervisor must be the result of a deliberate choice to follow the practice

and there is a causal link to the event and the acts of the supervisor. Id. Both Sgt Deignan

and Officer Rodriguez testified that Sgt Deignan gave the order to arrest Salvucci, Sr.

(See **Exhibit "D"** p. 93; **Exhibit "F"** 57). This order shows that Sergeant Deignan, as

senior officer (allegedly at the scene) operated in a decision making capacity during the

arrest and as a supervisor should be held responsible for the actions of subordinates who

are in his presence. Moreover, Sgt Deignan's mere presence at the scene and allowance

of the use of excessive force also would pose a genuine issue as to whether his

nonfeasance constitutes a deliberate choice to follow the practice. Finally, there is a

genuine issue as to whether intervention by Deignan could have prevented the injuries to

Salvucci, Sr.


### C.    PLAINTIFF'S HAVE ESTABLISHED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT IN REGARDS TO THE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The forceful arrest of Salvucci, Sr. coupled with the biased police protection

afforded the Salvucci family along with harassing behavior employed by the defendant

officers and the Watertown Police Department establish a triable issue of fact for the

emotional distress claim. Liability for intentional infliction of emotional distress is

subject to a four-part analysis:

> 1.) The actor intended to inflict emotional distress or he knew, or should
> have known that emotional distress would be the likely result of his conduct. 2.)
> The conduct was "extreme and outrageous" was "beyond all possible bounds of
> decency" and was "utterly intolerable in a civilized community. 3.) The actions of
> the defendant are the cause of the plaintiff's distress. 4.) Emotional distress was
> "severe" and of a nature that "no reasonable man can be expected to endure it.

Agis v Howard Johnson Co., 371 Mass. 140 (1976).

11

There is genuine issue of material fact as to whether the defendant officers and the Watertown Police Department (WPD) knew or should have known that severe emotional distress would likely result from their conduct. The plaintiff has presented evidence that in the midst of a heated and lengthy dispute between two neighbors the WPD, for self-serving reasons[1], favored the Dumornay family over the Salvucci family (*See* **Exhibit "B"**). Despite repeated requests by Frank Salvucci, Jr. (Salvucci, Jr.) and his family, no criminal complaints were ever filed against the Dumornay's despite compelling evidence of assault and battery by Francis Dumornay on Salvucci, Sr. (*See* **Exhibit "A"**) with serious injuries and other actions by the Dumornay's against the Salvucci family where the WPD did nothing. (See **Exhibit "A", "B", and "C"**). The police reports submitted are either slanted toward the Dumornay family or dismissive of the Salvucci's complaints. There is a material issue as to whether the WPD should have known that their bias against the Salvucci family would result in severe emotional distress culminating in physical injuries and the inability of both plaintiffs to live peaceably in their home.

Similarly, there is evidence presented that officers Rodriguez and Parent used excessive force while arresting Salvucci, Sr. for the minor offense of trespassing (See **Exhibit "G"** pp. 59-60). Salvucci, Sr., an elderly man of slight build, testified that he was man-handled, thrown to the ground and hit in the back by Rodriguez and Parent. This attack along with the subsequent events resulted in "severe blood pressure elevation, which put him at risk for stroke or heart disease" (*See* **Exhibit "A"**). "Conduct otherwise reasonable may become tortuous when directed at an individual known to be particularly susceptible to infliction of emotional distress." Boyle v Wenk, 378 Mass.

---

[1] Footnote reference to Chief's lawsuit

12

592, 597. Given that the elderly are generally more susceptible to greater health risks and distress when engaged in stressful situations, there is a genuine issue of fact that the officers should have known that unnecessarily subjecting an 82 year old man to high degree of trauma would likely result in severe emotional distress.

Also, the plaintiffs have presented credible evidence of intentional acts from Deignan and the WPD meant to cause emotional distress. There is evidence of a 72-minute telephone conversation between Deignan of the WPD and Salvucci, Jr. where Salvucci, Jr. alleged that he was told the police were going to use his family to help the WPD repair it's anti-minority image (*See* **Exhibit "A" and "B"**). The exact content of this phone conversation is an issue of material fact. See eg., <u>Doe v Town of Plymouth,</u> 825 F. Supp. 1102 (The claim survived a motion for summary judgment because the details of a phone conversation which resulted in the plaintiff revealing she was HIV positive, were disputed.)

More evidence of intentional conduct includes a complaint filed by Salvucci, Jr. against Deignan for following him in a patrol car through Watertown Square (*See* **Exhibit "F"** p. 111). Salvucci, Jr. was issued a parking ticket, allegedly for no reason other than to harass Salvucci (*See* **Exhibit "B"**). Also, the WPD totally ignored a no trespass notification and without cause appeared at the Salvucci's home demanding information on the whereabouts of Salvucci, Jr.'s former wife when there was no crime occurring or threat of a crime at the home (*See* **Exhibit "B"**) and his ex-wife did not reside with him. (*See* **Exhibit "B"**)The validity of these actions and whether they were taken with the intent to cause severe emotional distress to the Salvucci family is a genuine issue of material fact to be deliberated by a jury.

There is a question of fact that the Watertown Police Department's conduct was "extreme and outrageous". When deciding the extremity of conduct, it is important to note "repeated harassment . . . may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress." Boyle v Wenk, 378 Mass. 592, 596. Thus, when determining extreme and outrageous behavior, the totality of events must be considered as opposed to weighing each act individually. Further, the Watertown Police Department and the other defendants have exhibited conduct that "may reasonably be viewed as an attempt to intentionally shock and harm a person's 'peace of mind' by invading the person's mental or emotional tranquility." Id. at 596. Here, the Salvucci's have been subjected to repeated conduct such as biased police protection, assault during an arrest, following them without cause, issuing unnecessary parking tickets, appearing at the Salvucci home, parking in front of the Salvucci home, intimidating a lady friend and Salvucci, Jr.'s son. (See **Exhibit "B"**) and other tactics used for the intent of pressuring the Salvucci's to discontinue their lawsuit. These actions have resulted in the inability of the Salvucci's to enjoy a peaceful existence in their own home and in the City of Watertown. Whether these events as a whole amount to "extreme and outrageous conduct" is a genuine issue of material fact.

The acts of the defendants clearly caused distress to the Salvucci family. Salvucci, Sr. testified that pursuing his case against the Watertown Police Department and other defendants have financially bankrupted him (See **Exhibit "G"** p. 94). Further, there exists a genuine issue that had the Watertown Police Department and other

defendants properly handled the neighborhood dispute giving the Salvucci's equal protection no distress would have resulted.

Finally there is a material issue regarding the severity of the distress. Salvucci, Sr. has suffered from dangerously high blood pressure, which could result in heart disease or a stroke (*See* **Exhibit "A"**). Also, due to the actions of the police the Salvucci's claim they can no longer lead normal lives. The Dumornay's, continue to threaten the entire family without consequence. While inadequate protection and repeated harassment from the WPD has lead to a constant state of paranoia where the family lives in fear of their neighbors and their local police department believing they have nowhere to turn for resolution to this ongoing problem or other matters that may arise requiring police protection.

**D.    THERE IS A GENUINE ISSUE OF MATERIAL FACT THAT THE WATERTOWN POLICE DEPARTMENT AND OTHER DEFENDANTS DID NOT PROVIDE ADEQUATE POLICE PROTECTION TO THE PLAINTIFFS.**

The plaintiffs have presented evidence that biased police reporting resulted in criminal harassment charges being brought against Salvucci, Jr. Under the Fourteenth Amendment, no state may "deny any person within its jurisdiction equal protection of the laws." U.S. Constitution Amendment XIV. While the Due Process Clauses "generally confer no affirmative right to governmental aid" DeShaney v. Winnebago County of Social Services, 489 U.S. 189, 197 (1989), the state may not abuse governmental power, or employ it as an instrument of oppression Davidson v. Cannon, 474 U.S. 344, 349 (1986). The courts have recognized successful equal protection claims under the Class of One Standard where "the plaintiff alleges that [they] have been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." <u>Village of Willowbrook v Olech</u>, 528 U.S. 562, 565. See eg., <u>DeMuria v Hawkes</u>, 328 F.3d 704 (Police officer, who a personal friend of one party in a neighborhood dispute, subjected the plaintiffs to a different standard of protection when he delayed in issuing an arrest warrant against the defendant.)

Here we have a dispute between two neighbors that began in January, 2001 over the right to use a driveway easement. The Watertown Police were called to intervene by both families. The call distribution of roughly 30 by the Salvucci's and 20 by the Dumornay's evidence's a relatively equivalent amount of complaints by both families. After Detective Logue (Logue) was assigned to review these complaints, he issued a report on March 30, 2002 where he listed instances where "it appeared that Mr. Salvucci, Jr. engaged in conduct that may be considered criminal harassment" (See (*See* **Exhibit "H"** Incident Report # 2006610). No charges against Salvucci, Jr. were filed at this time. Logue did not state that there was any evidence in the incident reports indicative of any racial crimes. (*See* **Exhibit "H"**)

In the period between April and August 2002 complaints continued to be filed by both families. Unlike their earlier complaints, the Dumornay's began alleging that the Salvucci's were using racially sensitive language. For example, on June 21, 2002 a police report was submitted regarding a confrontation between Salvucci, Jr. and the two Dumornay daughters over acceptable use of the easement. ((*See* **Exhibit "H"** Incident Report # 2013053) In this report, no racial allegations were observed. (*See* **Exhibit "H"**) Over one month later, on August 14, 2002 a "supplemental report" was filed by the Dumornay family, in which they now alleged that Salvucci, Jr. used racial slurs during the past June confrontation. (*See* **Exhibit "H"**); racial slurs never appeared in the original

reports. To add to the suspiciousness, Logue submitted a second report citing instances where Salvucci, Jr., criminally harassed the Dumornay family. This report, submitted on August 6, 2002, contained a body of text identical to that of the report Logue submitted back in March. The result of this report was criminal complaints being issued against Salvucci, Jr. in September, 2002. Conversely, the Salvucci's filed supplemental reports, but none of the reports were acted upon or even acknowledged.

Also, on March 29, 2002 a police report was filed after Salvucci, Jr. called the police regarding a "death cross" that had been constructed in his yard. Upon reading the report, Salvucci, Jr. was concerned that the report was inaccurate. Also he was disturbed by the manner in which the responding officer handled the situation. Salvucci, Jr. submitted a supplemental report addressing the inaccuracies of the original report and stating that the responding officer used racially sensitive language when referring to the Dumornay family. This report was not used to supplement the original report. Nor have the Salvucci's been made aware of any actions taken by the WPD to investigate the conduct of the officer responsible for handling the Salvucci's complaint. This evidence provides a genuine issue of material fact that the WPD intentionally discriminated against the Salvucci family while handling the ongoing neighborhood dispute.

In summary, while the Fourteenth Amendment does not provide a minimum level of protection it does require that the protection received be equal and that law enforcement be neither arbitrary nor oppressive. The plaintiffs have presented credible evidence that the WPD intentionally injected racial sentiment into police incident reports and that police reporting has been biased against the Salvucci's, even to the point where the Dumornay's were coached about what to say during police interviews. They have

presented evidence that the WPD assaulted Salvucci, Sr. during his arrest.   And they

have presented evidence that the WPD has consistently harassed the Salvucci's through

telephone conversations, following Salvucci, Jr. in a patrol car, and appearing at his home

without just cause after receiving a notice not to trespass.   In light of the pending

discrimination lawsuit against Chief Deveau, brought by a black female officer, the WPD

has substantial motivation to favor a family of color over a white family in this type of

dispute. A reasonable juror could find that the WPD abused its power and discriminated

against the Salvucci's, then used coercion and intimidation to attempt to keep the

Salvucci's quiet.   These actions clearly constitute a violation of the Equal Protection

Clause.

### E.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

As the Supreme Court recently reminded us, in order to decide whether a

defendant is entitled to qualified immunity, we must first determine whether (taking the

facts in the light most favorable to the plaintiff) a constitutional right was violated, and

second, if those facts would demonstrate a violation, we must decide whether the right in

question was clearly established at the time the events took place.   Saucier v. Katz, 533

U.S. 194, 200 (2001) *see also* Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998).

This Court, as an initial matter, must determine whether Plaintiffs have alleged

facts that would show Defendants conduct violated Plaintiffs constitutional rights and

Plaintiffs contend that Defendants conduct has. *Id.*

Defendant officers' employment of excessive force upon Salvucci, Sr. as set forth

herein and in **Exhibit "A"** clearly establishes a violation of Salvucci, Sr.'s Fourteenth

Amendment rights. The first element of whether a defendant is entitled to qualified immunity is therefore satisfied

Next this Court must determine whether the right in question (Salvucci Sr.'s Fourteenth Amendment rights) were clearly established at the time the events took place. Saucier at 200 (2001).

Whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. The right must be clear enough that "a reasonable official would understand that what he is doing violates that right." Id. at 202. Although the officer must have knowledge of the right, it is not necessary that a case be "on all fours" with this one for the case to go to a jury. Montville v. Lewis, 87 F.3d 900, 902 (7th Cir. 1996). Instead, the question we must ask is whether the law provided Shepard with "fair warning" that his conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730 (2002).

Salvucci Sr.'s federally protected right is to be free from the use of excessive force. The Defendant Officers, furthermore, did not act reasonably during the arrest of Salvucci, Sr., and therefore knew their conduct and actions were unconstitutional. This Court should have no doubt that this right was clearly established at the time of or prior to Salvucci Sr.'s arrest. See Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992).

## IV.    CONCLUSION

**WHEREFORE** Plaintiffs respectfully request this Honorable Court deny Defendants' Motion for Summary Judgment as there exist genuine issues of material fact which warrant a jury trial.

Respectfully Submitted:
Plaintiffs,
By Their Attorney:

/s/ Theodore H. Goguen, Jr., Esq.

Theodore H. Goguen, Jr., Esq.
BBO # 196740
GOGUEN, MCLAUGHLIN, RICHARDS,
& MAHANEY, LLP
2 Pleasant Street
S. Natick, MA 01760
(508) 651-1000

Dated:  June 19, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for the Defendants by first class mail this 19th day of June 2006.

/s/ Theodore H. Goguen, Jr., Esq.

Theodore H. Goguen, Jr., Esq.

20