UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANK SALVUCCI, SR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-12351-JGD |
| WATERTOWN POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

October 31, 2006

DEIN, U.S.M.J.

## I.  INTRODUCTION

This civil rights case arises out of actions taken by police officers for the Town of Watertown, Massachusetts in response to a dispute between the plaintiffs, Frank Salvucci, Sr. and Frank Salvucci, Jr., and their neighbors.  The defendants include the Watertown Police Department, its Chief of Police Edward Deveau, Officers Keith Parent and Orlando Rodriguez, Sergeants Deignan, Logue and Hoiseth, and Officers Leitner and Donohue.  The Salvuccis allege that the defendants deprived them of their civil rights under federal and state law, committed assault and battery against them and caused them to suffer emotional distress.  They have named the individual defendants in both their individual and official capacities.

The matter is presently before the court on the defendants' motion for summary judgment (Docket No. 22), by which the defendants are seeking summary judgment in their favor with respect to all Counts of the plaintiffs' Complaint.  The Complaint contains four Counts consisting of claims against all of the defendants for violations of the plaintiffs' constitutional rights (Counts I and IV), claims against Officer Rodriguez, Officer Parent and Sergeant Deignan for assault and battery (Count II), and claims against all of the defendants for intentional infliction of emotional distress (Count III).

For all the reasons detailed herein, the defendants' motion is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is DENIED as to the plaintiffs' claims for excessive force against Officers Rodriguez and Parent, and the claims for assault and battery against Officers Rodriguez and Parent as alleged in Counts I, II and IV of the Complaint, thereby leaving those claims for trial.  The motion for summary judgment is ALLOWED as to all the remaining claims.

## II.  <u>STATEMENT OF FACTS</u>[1]

The following material facts are undisputed unless otherwise indicated.

Plaintiff Frank Salvucci, Jr. resides at 8 Falmouth Road in Watertown, Massachusetts, in a home which he has owned since January 2001.  (PF ¶ 1).  He is the son of plaintiff Frank Salvucci, Sr.  (Pls.' Ex. A ¶ 6).  Francis Dumornay and Bertilde Franklin (collectively, the "Dumornays") reside next door to Mr. Salvucci, Jr. at 43 Waltham Street.  (DF ¶ 2).  The two properties share an easement, which is used by the Dumornays to access their driveway.  (DF ¶ 3; PF ¶ 3).

### <u>The Dispute Between the Salvuccis and the Dumornays</u>

The circumstances which resulted in this litigation arose as a result of an ongoing dispute between the Salvuccis and the Dumornays allegedly involving harassing and threatening behavior and property damage.  (<u>See</u> <u>generally</u> attachments to Pls.' Ex. B).  In connection with this dispute, the Salvuccis sought assistance from the Watertown police on approximately 30 occasions during the time period from January 2001 to January 2005.  (DF ¶¶ 6, 7).  The Dumornays sought police assistance on about 22 occasions during that time period.  (DF ¶¶ 8, 9).  Each time, police officers were dispatched to the

---

[1]  The facts are derived from (1) the Defendants' L.R. 56.1 Statement of Undisputed Facts (Docket No. 24) ("DF") and the exhibits attached thereto ("Defs.' Ex. __"); (2) the Plaintiffs' Responses to Defendants' Statement of Undisputed Material Facts ("PR"), which is set forth in the Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendants' Motion for Summary Judgment (Docket No. 28) ("Pls.' Mem."); (3) the Plaintiffs' L.R. 56.1 Statement of Undisputed Facts ("PF"), which also is contained in their Memorandum of Law; and (4) the exhibits attached to the Plaintiffs' Memorandum of Law ("Pls.' Ex. __").

parties' residences.  (DF ¶¶ 5-9; PF ¶¶ 7-9).  These incidents resulted in police reports

being generated, although the plaintiffs contend that the reports were inaccurate and

incomplete.  (See DF ¶ 10; PR ¶ 10; attachments to Pls.' Ex. B).

### The Arrest of Mr. Salvucci, Sr.

On June 21, 2002, the police arrested Mr. Salvucci, Sr. following a complaint from

Mr. Dumornay.  (Ex. 6 to Pls.' Ex. B).  The plaintiffs assert that the defendants' unlawful

actions in connection with the arrest caused them harm and violated their civil rights.

Specifically, on June 21, 2002, the Watertown police were dispatched to the

Dumornay residence following a call from Mr. Dumornay in which he complained about

Mr. Salvucci, Sr.  (DF ¶ 11; PF ¶ 10).  Officers Rodriguez and Parent, as well as Sergeant

Deignan, responded to Mr. Dumornay's complaint.  (PF ¶¶ 11, 12, 14).  According to the

police officers' reports, when the defendants arrived at Mr. Dumornay's residence,

Mr. Salvucci, Sr. was standing approximately fifteen feet in front of Mr. Dumornay's

garage door, and Mr. Dumornay was unable to move his car due to the fear of striking the

plaintiff.  (Ex. 6 to Pls.' Ex. B at 2-3).  Officer Rodriguez advised Mr. Salvucci, Sr. that

he was trespassing and told him to leave.  (Id.)  The plaintiff insisted that he was standing

on his own property and refused to comply with the officer's instruction.  (Id.).  Conse-

quently, Sergeant Deignan ordered Officer Rodriguez to arrest Mr. Salvucci, Sr.  (PF

¶ 15; Pls.' Ex. F at 37).  Officers Rodriguez and Parent then handcuffed the plaintiff and

arrested him for trespassing and disturbing the peace.  (PF ¶ 16; DF ¶¶ 11, 12).  Mr.

Salvucci, Sr. denies that he was trespassing.  (PR ¶ 11).

4

The defendants contend that Mr. Salvucci, Sr. passively resisted his arrest "by attempting to pull his arms from behind his back." (Ex. 6 to Pls.' Ex. B at 3; DF ¶ 13). Mr. Salvucci, Sr. denies that he resisted, and asserts that the police officers used excessive force, which caused him to suffer severe injuries. (PR ¶¶ 11, 13). The record indicates that at some point Mr. Salvucci, Sr. sustained injuries to his knees and elbows, as well as a torn rotator cuff, although the defendants deny that any injury was caused by their conduct. (See PF ¶ 19; Pls.' Ex. A ¶ 3 and Ex. 1 thereto; Defs.' Mem. (Docket No. 23) at 5). At the time of the arrest, Mr. Salvucci, Sr. was 82 years old, 5½ feet tall and weighed about 145 pounds, while Officer Rodriguez was in his forties, about 6 feet tall, and weighed approximately 170 pounds, and Officer Parent was 28 years old, about 6 feet tall and weighed about 220 pounds. (PF ¶¶ 17-19).

## Legal Proceedings Against Mr. Salvucci, Sr.

Following the arrest, the defendants transported Mr. Salvucci, Sr. to the Watertown Police Department where he was booked, fingerprinted and photographed. (DF ¶ 15). Subsequently, Mr. Salvucci, Sr. was arraigned on criminal charges to which he pled not guilty. (DF ¶ 16; PR ¶ 16). After the court proceedings were completed, Mr. Salvucci, Sr. walked to his home, which was about two miles away. (DF ¶ 18). The plaintiff claims that he experienced extreme pain, shortness of breath and other physical problems during his walk. (PR ¶ 18).

Ultimately, Mr. Salvucci, Sr. was tried on charges of trespassing and disturbing the peace. (DF ¶ 19). He was convicted of trespassing, was given a 30-day suspended

5

sentence for one year, and was ordered to stay away from the Dumornays. (Id.).

According to Mr. Salvucci, Sr., he is pursuing an appeal of the conviction. (PR ¶ 19).

### Legal Proceedings Against Frank Salvucci, Jr.

The dispute between the Salvuccis, who are Caucasian, and the Dumornays, who are African-American, also gave rise to criminal harassment and civil rights charges being brought against Frank Salvucci, Jr. (DF ¶ 21; Ex. 13 to Pls.' Ex. B (listing race of individuals)). According to the defendants, Chief Deveau ordered Sergeant Logue to notify the Attorney General's Office and the District Attorney's Office regarding the Salvuccis and the Dumornays "based on the fact that racial allegations were being made" when the police responded to their calls. (DF ¶ 20). The plaintiffs suggest that the allegations regarding the use of racially sensitive language were fabricated. (PR ¶ 21; PF ¶¶ 23, 25). In any event, in September 2002, the District Attorney's Office brought criminal charges against Mr. Salvucci, Jr. (PF ¶ 26; DF ¶ 21). Following a trial, Mr. Salvucci, Jr. was convicted of criminal harassment. (DF ¶ 22; PR ¶ 22). He received a six-month suspended sentence and was ordered to avoid the Dumornays. (Id.).

Additional factual details relevant to the court's analysis are described below.

### III.  ANALYSIS

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' if the

evidence about the fact is such that a reasonable jury could resolve the point in the favor

of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)

(quotations and citations omitted). A material fact is one which has the "potential to

affect the outcome of the suit under the applicable law." Id. (quotations and citations

omitted).

The moving party bears the initial burden of establishing that there is no genuine

issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986). If that burden is met, the opposing party can avoid

summary judgment only by providing properly supported evidence of disputed material

facts that would require trial. See id. at 324, 106 S. Ct. at 2553. The non-moving party

"may not rest upon mere allegation or denials of his pleading," but must set forth specific

facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6

F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in

the light most favorable to the non-moving party and indulge all reasonable inferences in

that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after

viewing the record in the non-moving party's favor, the Court determines that no genuine

issue of material fact exists and the moving party is entitled to judgment as a matter of

law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d

134, 143 (D. Mass. 2006).

**B.      Counts I and IV: Civil Rights Claims Under 42 U.S.C. § 1983 and Massachusetts Law**

In Counts I and IV of their Complaint, the plaintiffs are seeking recovery against the defendants for alleged violations of their civil rights under federal and state law. Thus, in Count I, the plaintiffs allege that the "civil rights granted to them by the Commonwealth of Massachusetts and the Government of the United States have been violated." (Compl. ¶ 42). In Count IV, the plaintiffs allege that the defendants are liable under 42 U.S.C. §§ 1983 and 1988. (Id. ¶ 56). While numerous constitutional rights are cited in the Complaint, in response to the defendants' motion seeking summary judgment on all claims in the Complaint, the plaintiffs have only briefed their constitutional claims arising out of the alleged use of excessive force in connection with the arrest of Mr. Salvucci, Sr., and the defendants' alleged failure to provide adequate police protection. Consequently, any other claims of alleged constitutional violations are deemed waived. See Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (arguments not briefed are waived).

## 1.    Claims Under § 1983 and the Massachusetts Civil Rights Act – In General

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quotations and citation omitted). It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061(1st Cir. 1997), cert. denied, 522 U.S. 819, 118 S. Ct. 71, 139 L. Ed. 2d 32 (1997).

Under Massachusetts law, alleged violations of civil rights are governed by the Massachusetts Civil Rights Act ("MCRA"), which provides in relevant part:

> Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief

9

> in order to protect the peaceable exercise or enjoyment of the right
> or rights secured.

Mass. Gen. Laws ch. 12, § 11H.  Moreover, the statute authorizes civil actions by any person who has suffered the interference or attempted interference of the rights described in § 11H.  Mass. Gen. Laws ch. 12, § 11I.  In order to prevail on such a claim, the plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Bally v. Northeastern Univ., 403 Mass. 713, 717, 532 N.E.2d 49, 51-52 (1989) (quoting Mass. Gen. Laws ch. 12, § 11H).  "The MCRA is coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion."  Sietins v. Joseph, 238 F. Supp. 2d 366, 377-78 (D. Mass. 2003) (quotations and citations omitted).

In the instant case, there is no dispute that each of the individual defendants was acting in his official capacity at all relevant times and was therefore acting under color of state law for purposes of the plaintiffs' federal civil rights claims.  However, the defendants dispute that any of their conduct interfered with or deprived the plaintiffs of their constitutional rights.  Moreover, the defendants argue that even if they violated the plaintiff's constitutional right to remain free from excessive force, they are shielded from liability by the doctrine of qualified immunity.

10

For the reasons detailed below, this court finds that there are genuine issues of fact precluding summary judgment for Officer Rodriguez and Officer Parent with respect to the excessive force claims. However, summary judgment shall enter in favor of the defendants on the other claims raised by Counts I and IV of the Complaint.

## 2.    **Claims for False Arrest**

While it is unclear whether the plaintiffs are asserting any false arrest claims arising out of the arrest of Mr. Salvucci, Sr.,[2] the defendants have addressed such claims. To avoid any future confusion, this court has reviewed the defendants' arguments and agrees that any claim of false arrest of Mr. Salvucci, Sr. is barred by the doctrine established in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). There, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87, 114 S. Ct. at 2372 (emphasis added). Accordingly, where, as here, a plaintiff in a § 1983 action has been convicted, and the conviction has not been invalidated, the civil rights claim cannot survive if "a judgment in favor of the plaintiff

---

[2] It appears to be undisputed that Mr. Salvucci, Jr. was never arrested by any of the defendants.

would necessarily imply the invalidity of his conviction." Id. at 487, 114 S. Ct. at 2372.

See also Thore v. Howe, – F.3d –, 2006 WL 3041978 (1st Cir. Oct. 27, 2006).

"In a false arrest case, the question normally is whether the arresting officer could

reasonably believe that the information he or she possessed constituted probable cause."

Lallemand v. Univ. of R.I., 9 F.3d 214, 215 (1st Cir. 1993). Here, Mr. Salvucci, Sr. was

arrested and charged with trespassing and disorderly conduct, and was convicted of

trespassing. Because the arrest of Mr. Salvucci, Sr. "was a single, indivisible event," the

plaintiffs, "in order to prevail on [their] section 1983 false arrest claim, would have to

prove that [the defendants] did not have probable cause to arrest [Mr. Salvucci, Sr.] for

*any* reason. But proof that there was no probable cause to arrest for any reason

necessarily implies the invalidity of the conviction for [trespass]. This is precisely the

situation that *Heck* does not countenance." Sholley v. Town of Holliston, 49 F. Supp. 2d

14, 18 (D. Mass. 1999) (emphasis in original) (internal citation omitted). See also Davis

v. Schifone, 185 F. Supp. 2d 95, 100 (D. Mass. 2002) (following reasoning of Sholley in

concluding that false arrest claim should be barred). Therefore, under Heck, the false

arrest claims, if any, are precluded.

### 3.    Claims for Inadequate Police Protection Under the Fourteenth Amendment

As the plaintiffs recognize, "the Due Process Clauses [of the Fifth and Fourteenth

Amendments] generally confer no affirmative right to governmental aid, even where such

aid may be necessary to secure life, liberty, or property interests of which the government

itself may not deprive the individual." DeShaney v. Winnebago County Dep't of Soc.

Servs., 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989). Therefore,

"the Due Process Clause imposes no affirmative obligation on the State to provide the

general public with adequate protective services[.]" Id. at 197, 109 S. Ct. at 1004. (See

generally Pls.' Mem. at 15). Nevertheless, the plaintiffs contend that they may assert a

claim of inadequate police protection under the equal protection clause. (Pls.' Mem. at

15-18). Because the plaintiffs have failed to present sufficient evidence of discriminatory

animus to support an equal protection claim, this court finds that summary judgment in

favor of the defendants is warranted.

### Equal Protection Claims Based on a "Class of One"

"The purpose of the equal protection clause of the Fourteenth Amendment is to

secure every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper

execution through duly constituted agents." Vill. of Willowbrook v. Olech, 528 U.S.

562, 564, 120 S. Ct. 1073, 1074-75, 145 L. Ed. 2d 1060 (2000) (per curiam) (quotations,

citations and alterations omitted). Thus, "[t]he State may not . . . selectively deny its

protective services to certain disfavored minorities without violating the Equal Protection

Clause." DeShaney, 489 U.S. at 197 n.3, 109 S. Ct. at 1004 n.3. Nor can the State

discriminate against a "class of one" by intentionally treating the plaintiff differently from

others similarly situated without a rational basis for the difference in treatment. Vill. of

Willowbrook, 528 U.S. at 564, 120 S. Ct. at 1074. See also DeMuria v. Hawkes, 328

F.3d 704, 707 (2d Cir. 2003) (complaint adequately stated an equal protection claim where plaintiffs alleged that police officer maliciously and arbitrarily provided a different standard of protection than that afforded to other town residents).

The Salvuccis, who are Caucasian, have not shown that they belong to a disfavored minority class. Nevertheless, they assert that they are a "class of one," and that they were deprived of equal protection because the defendants provided them with a different standard of police protection than the defendants gave to the Dumornays. In order to prevail under this theory, the plaintiffs must prove that the defendants "(1) intentionally treated them differently (2) from others similarly situated (3) without a rational basis for the difference in treatment." Pariseau v. City of Brockton, 135 F. Supp. 2d 257, 263 (D. Mass. 2001). This court finds that the plaintiffs have failed to provide sufficient evidence to show that the defendants had the level of discriminatory intent necessary to support their "class of one" equal protection claims.

## The Requisite Intent

Because the plaintiffs are not claiming that were selectively treated based on their protected class status, they must establish that any difference in treatment was due to the defendants' malicious or bad faith intent to injure them. See Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004) (in order to prove equal protection claim, plaintiff must present evidence showing that "compared with others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or* malicious or bad faith intent to injure a

14

person.") (quoting <u>Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp.</u>, 246 F.3d 1, 7 (1ˢᵗ Cir. 2001)); <u>Walsh</u>, 431 F. Supp. 2d at 143-45 (under First Circuit law, plaintiff must establish "that the difference in treatment was due to malicious or bad faith intent on the part of the defendants to injure her" to prevail on her "class of one" equal protection claim). The "plaintiff must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'" <u>Tapalian</u>, 377 F.3d at 6 (quoting <u>Baker v. Coxe</u>, 230 F.3d 470, 474 (1ˢᵗ Cir. 2000)). Accordingly, the plaintiffs' burden is an onerous one, which requires evidence that the defendants engaged in "a gross abuse of power, invidious discrimination or fundamentally unfair procedures," such as a "malicious[ly] orchestrated campaign." <u>Walsh</u>, 431 F. Supp. 2d at 145 (internal quotations and citations omitted). Even if the defendants had no rational basis for treating the plaintiffs differently from those similarly situated, "the equal protection claim cannot succeed unless Plaintiffs can make a threshold showing of the requisite discriminatory intent." <u>Pariseau</u>, 135 F. Supp. 2d at 264.

## **The Factual Record**

After a careful analysis of the record, this court concludes that the plaintiffs have not alleged sufficient facts to survive the defendants' motion for summary judgment on the equal protection claim. Thus, it is undisputed that both the Salvuccis and the Dumornays filed a myriad of complaints against the other, requiring a significant expenditure of time and resources by the Watertown Police Department. The police did

respond time and again although not always as promptly as the Salvuccis wanted.  The record, at most, establishes that the defendants at times may have acted arbitrarily, but it does not support a claim of "an orchestrated and spiteful effort to 'get'" the plaintiffs. See Walsh, 431 F. Supp. 2d at 146.

It is the plaintiffs' contention that the defendants basically set up Mr. Salvucci, Jr. by helping and/or encouraging the Dumornays to file reports which framed the dispute as being racially motivated on the part of the Salvuccis, while ignoring comparable complaints against the Dumornays by the Salvuccis.  Consequently, Mr. Salvucci, Jr. was charged with criminal harassment and criminal civil rights violations against the Dumornays.  However, the Salvuccis' claim of a constitutional violation is defeated by the fact that Mr. Salvucci, Jr. was, in fact, convicted of criminal harassment against the Dumornays.  (PR ¶ 22).  The plaintiffs cannot argue that they were treated maliciously "when much of the adverse treatment to which [they were] subjected was due to [their] own improper or illegal conduct . . . ."  Walsh, 431 F. Supp. 2d at 146.  The fact that others may also have engaged in wrongful conduct does not excuse the plaintiffs' own behavior.  Nor does it support a claim of a constitutional violation against the police for pursuing claims against the plaintiffs arising out of the plaintiffs' own wrongful behavior.

The plaintiffs claim that they were treated differently from the Dumornays in order to dispel any publicly held belief that Chief Deveau was racist.  Specifically, the record contains an affidavit from Mr. Salvucci, Sr. in which he stated:

16

> [t]he reason for the Defendants infliction of injury upon me and
> ignoring all of my complaints relative to the Dumornay/Franklin
> family is that Defendant, Chief Edward Deveau was at the relevant
> times sued by a black female Watertown Police Department officer
> on racial grounds.  To evidence that he was not a racist he and the
> other Defendants with his express knowledge and consent constantly
> favored the Dumornay/Franklin family over mine.  The
> Dumornay/Franklin family is a family of color.

(Pls.' Ex. A ¶ 10).  As an initial matter, the plaintiffs have not indicated the underlying

factual basis for this statement, and have provided no citations to any other portions of

the record in order to support this statement.  "Indeed, '[e]ven in cases where elusive con-

cepts such as motive or intent are at issue, summary judgment may be appropriate if the

nonmoving party rests merely upon conclusory allegations, improbable inferences, and

unsupported speculation.'"  LeBlanc, 6 F.3d at 841-42 (quoting Medina-Munoz v. R.J.

Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Mr. Salvucci, Sr. has not provided

an adequate foundation for his assertion that the defendants purposefully discriminated

against him and his son in order to advance Chief Deveau's defense to a discrimination

claim or to otherwise demonstrate that he was not racist.

Furthermore, Mr. Salvucci, Jr.'s broad assertions that the defendants ignored his

complaints, always sided with the Dumornays and engaged in a pattern of harassment

against him and his family are conclusory and are defeated by the record.  (See Pls.' Ex.

B ¶¶ 39, 40, 46-48).  The police reports submitted by the plaintiffs show that the

defendants repeatedly investigated Mr. Salvucci, Jr.'s complaints, prepared reports

detailing the Salvuccis' claims regarding the Dumornays' behavior and encouraged the

17

Salvuccis to pursue their grievances in court.  For example, while Mr. Salvucci, Jr. complains that the police did nothing in response to his various complaints that the Dumornays smashed his bushes and yelled obscenities, the police reports filed in support of Mr. Salvucci, Jr.'s claims indicate that the police responded to his calls and investigated his complaints, but concluded that the Dumornays had done nothing wrong. (See Pls.' Ex. B ¶¶ 24, 31, 36 and Ex. 13 thereto).  Also, according to the police reports, the police conducted a thorough investigation of the plaintiffs' allegations of wrongdoing by Mr. Dumornay against Mr. Salvucci, Jr.'s son.  (Ex. 21 to Pls.' Ex. B (Incident Report No. 3019726-1)).  The reports further demonstrate that the police officers prepared written descriptions of the plaintiffs' allegations, interviewed available witnesses, and encouraged Mr. Salvucci, Jr. to preserve evidence against the Dumornays and to seek criminal charges against the Dumornays in the District Court.  (Ex. 12, 13, 17, 18 and 20-22 to Pls.' Ex. B).  In sum, the numerous police reports submitted by the plaintiffs illustrate not only that the police repeatedly responded to the plaintiffs' complaints, but also that the police took the Salvuccis' complaints seriously, even if the police did not arrive at the conclusions the Salvuccis wanted and their responses to those complaints did not result in criminal charges being brought against the Dumornays.  The suggestion that the defendants were out to "get" the Salvuccis is simply not borne out by the documentary evidence submitted by the plaintiffs.

The plaintiffs have not met their substantial hurdle of establishing an equal protection claim based on a class of one. Therefore, the defendants' motion for summary judgment is allowed with respect to the equal protection claims asserted in Count IV.

### 4.    Claims of Excessive Force

The defendants have moved for summary judgment with respect to the excessive force claims asserted in Counts I and IV. In support of their motion, the defendants contend that the evidence shows that the arresting officers, Rodriguez and Parent, used only the minimum amount of force necessary to effectuate the arrest of Mr. Salvucci, Sr., and that they therefore acted reasonably under the circumstances. (Defs.' Mem. at 4-6). They also argue that the remaining defendants should be granted summary judgment because they either were not present during the arrest or, in the case of Sergeant Deignan, did not touch the plaintiff. (Id. at 5). This court finds that the plaintiffs have presented genuine issues of material fact as to whether Officers Rodriguez and Parent used excessive force during the arrest of Mr. Salvucci, Sr. However, the claims of excessive force against the remaining police officers fail as a matter of law.

### Excessive Force Standard of Review

"A claim that the police used excessive force in making an arrest must be analyzed in light of the Fourth Amendment's prohibition of unreasonable searches and seizures." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 205 (1st Cir. 1990), cert. denied, 500 U.S. 956, 111 S. Ct. 2266, 114 L. Ed. 2d 718 (1991). Accord Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) ("*all* claims

that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").  Because "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," a determination as to "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396, 109 S. Ct. at 1871-72 (internal quotations and citations omitted).  Thus, "[t]he pertinent question is whether the force used was 'objectively reasonable' under all the circumstances; that is, whether it was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." Gaudreault, 923 F.2d at 205.  In applying this test, courts must "pay careful attention to the facts and circumstances of the particular case at hand, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." Id.  However, it is important to remain mindful that "not every push or shove rises to the level of a constitutional violation." Id.  Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a

20

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396, 109 S. Ct. at 1872.

### Officers Rodriguez and Parent

The record demonstrates that Officers Rodriguez and Parent effectuated the arrest of Mr. Salvucci, Sr. However, it is unclear whether the arresting officers used an objectively reasonable amount of force or whether they employed force that was excessive under the circumstances. For example, the evidence shows that at the time of the arrest, Mr. Salvucci, Sr. was an 82 year old, slightly built man, while the arresting officers were decades younger and substantially larger. (PF ¶¶ 17-19). The plaintiffs also have presented evidence indicating that Mr. Salvucci, Sr. sustained injuries to his knees and elbows, as well as a torn rotator cuff as a result of the arrest. (PF ¶ 19; Pls.' Ex. A ¶ 3 and Ex. 1 thereto). A jury could find that these injuries occurred in connection with the plaintiff's arrest for the relatively minor crimes of trespassing and disturbing the peace; there is no evidence that Mr. Salvucci, Sr. was engaged in a more serious crime against a person or property. (DF ¶ 11). Moreover, nothing in the record suggests that Mr. Salvucci, Sr. was armed or that he was posing a threat to the officers or any members of the public. This court concludes that when all of these facts are viewed in the light most favorable to the plaintiffs, they could support a finding that Officers Rodriguez and Parent used a level of force that exceeded the amount of force that a reasonable police officer would think necessary to restrain the plaintiff under the circumstances.

**Sergeant Deignan**

Although Sergeant Deignan had no physical contact with Mr. Salvucci, Sr. during

his arrest, the plaintiffs contend that Sergeant Deignan should be held liable as a result of

his status as the supervising officer.  (Pls.' Mem. at 10-11).  This court finds that the

plaintiffs have not presented sufficient evidence to support a claim of supervisory liability

against Sergeant Deignan.

Supervisory liability under § 1983 "cannot be predicated on a respondeat superior

theory," but may only be based on the supervisor's "own acts or omissions."  Whitfield v.

Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).  Thus, "[s]upervisory liability can be

grounded on either the supervisor's direct participation in the unconstitutional conduct, or

through conduct that amounts to condonation or tacit authorization."  Id.   The evidence

in the instant case shows that Sergeant Deignan ordered Officer Rodriguez to arrest

Mr. Salvucci, Sr., but did not otherwise participate in the arrest or in the alleged applica-

tion of excessive force against the plaintiff.  (PF ¶¶ 15, 16; Pls.' Ex. F at 37; DF ¶¶ 11,

12).  Where, as here, the supervisor did not participate directly in the challenged conduct,

liability will only attach where "(1) the behavior of [his] subordinates results in a

constitutional violation and (2) the [supervisor's] action or inaction was *affirmatively*

*link[ed]* to the behavior in the sense that it could be characterized as supervisory

encouragement, condonation or acquiescence or gross negligence . . . amounting to

deliberate indifference."  Id. (alterations and emphasis in original; internal quotations and

citations omitted).  "Moreover, the indifference required to support supervisory liability

22

under section 1983 must be deliberate, reckless or callous," and "the affirmative link required between the action or inaction of a supervisor and the behavior of subordinates contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997) (quotations and citations omitted).

As described above, the plaintiffs have presented sufficient evidence to create a genuine dispute as to whether Officers Rodriguez and Parent used excessive force in violation of the Fourth Amendment. However, the record is void of any evidence linking their allegedly unconstitutional use of force to any acts or omissions of Sergeant Deignan. For instance, there is no evidence that Sergeant Deignan encouraged the other officers to use a particular amount of force, that Sergeant Deignan ignored any signs that Mr. Salvucci, Sr. was harmed or in distress, or that Sergeant Deignan even witnessed the actual arrest. Furthermore, the evidence shows that Officers Parent and Rodriguez had received general police training as well as training specifically pertaining to the proper use of handcuffs. (DF ¶¶ 23-25). Therefore, nothing in the record suggests that Sergeant Deignan was reckless when he ordered Officer Rodriguez to perform the arrest or that his order was likely to result in a constitutional violation. Accordingly, the plaintiffs cannot defeat summary judgment for Sergeant Deignan on the excessive force claim based on a theory of supervisory liability.

## The Remaining Police Defendants

The plaintiffs have not opposed the defendants' motion for summary judgment on the excessive force claims against defendants Deveau, Logue, Hoiseth, Leitner or Donohue, and the evidence does not support a claim that any of these officers used excessive force. The record demonstrates that the only defendants present at the time of the arrest were Officer Rodriguez, Officer Parent and Sergeant Deignan. (PF ¶¶ 11, 12, 14). Moreover, there is nothing in the record to indicate that anyone other than Officers Rodriguez and Parent had physical contact with Mr. Salvucci, Sr. during the course of the arrest. Consequently, the plaintiffs cannot establish the existence of any genuine issues of material fact that would preclude summary judgment for the remaining defendants on the excessive force claims.

### 5.    Qualified Immunity for Use of Force

Because there is a genuine dispute as to whether Officers Rodriguez and Parent employed excessive force in connection with Mr. Salvucci, Sr.'s arrest, this court must consider the defendants' argument that they are protected from liability for excessive force under the doctrine of qualified immunity. This court finds that there are disputed issues of fact which preclude summary judgment for the arresting officers on their qualified immunity defense.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d

396 (1982). "[W]hether an official protected by qualified immunity may be held

personally liable for an allegedly unlawful official action generally turns on the 'objective

legal reasonableness' of the action . . . assessed in light of the legal rules that were

'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639,

107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987) (quoting Harlow, 457 U.S. at 818-19; 102

S. Ct. at 2738-39). While qualified immunity cannot protect the defendants from liability

if, on an objective basis, no reasonably competent officer would have acted as they did,

"if officers of reasonable competence could disagree on [the lawfulness of the alleged

conduct], immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341, 106 S.

Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). Thus, the defense of qualified immunity

"provides ample protection to all but the plainly incompetent or those who knowingly

violate the law." Id.[3]

---

[3] Although the standard for evaluating the use of excessive force, like the qualified immunity analysis, employs an objective reasonableness test, "[t]he inquiries for qualified immunity and excessive force remain distinct ...." Saucier v. Katz, 533 U.S. 194, 204, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001). Whereas the application of the objective reasonableness test to the merits of an excessive force claim requires careful attention to the facts and circumstances of the particular case and consideration of certain factors described supra, "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Id. at 205, 121 S. Ct. at 2158. Thus, qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force" and "can apply in the event the mistaken belief was reasonable." Id. at 206, 121 S. Ct at 2158-59 (quotations and citations omitted).

The First Circuit, drawing on Supreme Court precedent, has developed a three-part procedure for determining whether a state actor is entitled to qualified immunity. The procedure requires this court to consider:

> (i) whether the plaintiff[s'] allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant[s], would have understood the challenged act or omission to contravene the discerned constitutional right.

Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). "Under ordinary circumstances, the development of the doctrine of qualified immunity is best served by approaching these inquiries in the aforestated sequence." Cox v. Hainey, 391 F.3d 25, 30 (1st Cir. 2004).

For the reasons detailed above, the record establishes that the first prong of the analysis has been satisfied. The facts, when viewed in the light most favorable to the plaintiffs, could support a finding that Officers Rodriguez and Parent deprived Mr. Salvucci, Sr. of his rights under the Fourth Amendment. The next consideration, "whether the right was clearly established at the time of the incident and whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." Whitfield, 431 F.3d at 8 (internal quotations and citations omitted). As the Supreme Court has emphasized, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be

26

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S. Ct. at 3039. Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). In the instant case, there are disputed facts as to what level of force, if any, was used to effectuate the arrest and, consequently, whether a reasonable officer executing an arrest under the circumstances confronting defendants Rodriguez and Parent would have understood that the use of such force violated the plaintiff's clearly established Fourth Amendment rights. See id. at 205, 121 S. Ct. at 2158 (qualified immunity protects reasonable mistakes regarding the appropriate level of force to be used under the circumstances). Therefore, this court is unable to conclude at this stage that the defendants are entitled to qualified immunity.

### C.   Count II: Claims for Assault and Battery

The defendants have moved for summary judgment on the assault and battery claims asserted against Officer Rodriguez, Officer Parent and Sergeant Deignan in Count II based on the same arguments that they made with respect to the excessive force claims, namely, that Officers Rodriguez and Parent acted reasonably under the circumstances surrounding the arrest and that Sergeant Deignan made no physical contact with the plaintiff. (See Defs.' Mem. at 4-6). For the reasons articulated above with respect to the excessive force claims, this court concludes that the motion for summary judgment on the

assault and battery claims should be allowed with respect to Sergeant Deignan, but denied with respect to Officers Rodriguez and Parent.

"[A]ssault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." Commonwealth v. McCan, 277 Mass. 199, 203, 178 N.E. 633, 634 (1931). A police officer "attempting a valid arrest has the right to use the force which is reasonably necessary to overcome physical resistance by the person sought to be arrested . . . ." Julian v. Randazzo, 380 Mass. 391, 396, 403 N.E.2d 931, 934 (1980). "The standard for determining whether force is reasonable for assault and battery claims is 'essentially the same' as the standard for determining if force is reasonable for Fourth Amendment excessive force claims." Parker v. Town of Swansea, 270 F. Supp. 2d 92, 102 (D. Mass. 2003). Therefore, "when a plaintiff alleges both a Fourth Amendment excessive force claim and an assault and battery claim in the same complaint, the constitutional claim and the common law claim 'rise or fall in the same manner.'" Id. (quoting Jesionowski v. Beck, 937 F. Supp. 95, 105 (D. Mass. 1996)).

As set forth above, Officers Rodriguez and Parent are not entitled to summary judgment on the plaintiffs' excessive force claims because a disputed issue remains as to whether these defendants used an objectively reasonable amount of force or employed force that was excessive under the circumstances. As a result, the defendants' motion for summary judgment on the assault and battery claim is denied as to these defendants only.

### D.    Count III: Intentional Infliction of Emotional Distress

28

Finally, the defendants are seeking summary judgment in their favor on the intentional infliction of emotional distress claims set forth in Count III of the Complaint. In order to prevail on such a claim, the plaintiff must establish:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Agis v. Howard Johnson Co., 371 Mass. 140, 145, 355 N.E.2d 315, 318-19 (1976) (quotations and citations omitted). The defendants argue that the plaintiffs have failed to set forth any facts showing that the actions of the defendants were extreme and outrageous or that the individual defendants knew that their conduct was likely to cause emotional distress. (Defs.' Mem. at 7). They also assert that the Town of Watertown is immune from liability. (Id.). This court agrees that the Town is not subject to liability for intentional infliction of emotional distress, and that the plaintiffs have failed to present evidence showing that the individual police defendants engaged in extreme and outrageous behavior. Therefore, the defendants are entitled to summary judgment on this claim.

### **Town of Watertown**

Mass. Gen. Laws ch. 258, § 10(c) protects the Town of Watertown from "any claim arising out of an intentional tort, including . . . intentional mental distress . . . ."

Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 99 (D. Mass. 2001) (quoting Mass.

Gen. Laws ch. 258 § 10(c)).  Because the plaintiffs' claim for intentional infliction of

emotional distress is predicated upon the intentional conduct of Watertown police

officers, the Town enjoys immunity from liability for that claim.  Id.   Consequently, the

Town is entitled to summary judgment with respect to Count III.

### Individual Defendants

With respect to the individual defendants, the plaintiffs argue that there is evidence

showing that they engaged in extreme and outrageous behavior, which they knew or

should have known was likely to cause the plaintiffs to suffer severe emotional distress.

Specifically, the plaintiffs, relying on their own affidavit testimony, assert that the

defendants used excessive force in connection with Mr. Salvucci, Sr.'s arrest, consistently

favored the Dumornays over the Salvuccis, and carried out acts of harassment such as

issuing the plaintiffs unnecessary parking tickets, parking in front of Mr. Salvucci, Jr.'s

home, following the plaintiffs without good cause, and intimidating the Salvuccis' family

and friends.  (Pls.' Mem. at 12-14 (citing Pls.' Ex. A and B)).  As detailed above,

however, the undisputed facts establish a situation where, at most, the defendants

continuously responded to complaints made by feuding neighbors and found the

Salvuccis to be in the wrong more often than the Dumornays.  The defendants responded

to, but did not create, the neighborhood war.  The acts which the plaintiffs characterize as

acts of harassment are not more than the police doing their jobs, although with more vigor

than the Salvuccis found appropriate.  The conduct complained of simply does not rise to

the level of being "extreme and outrageous" or "beyond all possible bounds of decency" or "utterly intolerable in a civilized community."

Similarly, without in any way minimizing the plaintiffs' claim of excessive force, the record is devoid of any factual allegations that would support a finding that Mr. Salvucci, Sr. was subject to such physical abuse or a beating that would justify the conclusion that the defendants' conduct was extreme and outrageous. Compare Poy v. Boutselis, 352 F.3d 479, 485-86 (1st Cir. 2003) (where the police struck plaintiff repeatedly on the face and back, used their handcuffs as brass knuckles to beat him, and left plaintiff scarred and in pain for months, jury verdict for severe emotional distress upheld).[4] Accordingly, summary judgment shall be entered for the defendants with respect to Count III.

## IV.  CONCLUSION

For all the reasons detailed herein, the defendants' motion for summary judgment (Docket No. 22) is ALLOWED IN PART and DENIED IN PART. The motion is DENIED as to the plaintiffs' claims for excessive force against Officers Rodriguez and Parent, and the claims for assault and battery against Officers Rodriguez and Parent as

---

[4] While the record does not support a finding of intentional infliction of emotional distress, in the event that the facts show otherwise in the trial of Mr. Salvucci, Sr.'s excessive force claim, the plaintiff may seek compensation for that same harm in the form of punitive damages. See Poy, 352 F.3d at 485 ("both the claims for intentional or reckless infliction of emotional distress and for punitive damages require proof of similarly extreme conduct").

alleged in Counts I, II and IV of the Complaint, thereby leaving those claims for trial.

The motion for summary judgment is ALLOWED as to all the remaining claims.


        / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge